UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIKE HOWELL, *et al.*,<br><br>                  Plaintiffs,<br><br>    v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>                  Defendant. | Case No. 24-cv-2791 (JMC) |

## MEMORANDUM OPINION

Plaintiffs Mike Howell and the Heritage Foundation seek a preliminary injunction compelling Defendant U.S. Department of Homeland Security (DHS) to release, under the Freedom of Information Act (FOIA), "[a]ll documents and communications between U.S. Customs and Border Protection [(CBP)] and the Executive Office of the Vice President related to the southwest border or illegal immigration" from January 20, 2021, to the present—and to do so in a matter of days due to the impending November 5, 2024, presidential election. ECF 1-5 at 2.[1] Plaintiffs insist that they are entitled to expedited processing of their request under the relevant FOIA provision and DHS regulation because, "[g]iven the importance of immigration to the voting public, Americans have a right to know what Vice President Harris did in her role as Border Czar as well as what she did to address the border crisis." ECF 7-1 at 11.

Yet, by failing to show their entitlement to expedited processing, or any processing, of their request under FOIA and applicable DHS regulations, Plaintiffs fall far short of a preliminary

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

injunction's high bar. Plaintiffs are unlikely to succeed on the merits of their expedited processing request because they failed to exhaust FOIA administrative processes, and they advance dubious claims of irreparable harm and the public interest. Whatever the virtue of Plaintiffs' attempt to expand transparency into the Vice President's role as so-called "Border Czar" in the final days before an election in which she is a major party's presidential candidate, the law plainly prohibits Plaintiffs from crossing FOIA's own border between administrative process and judicial review. The Court will therefore **DENY** Plaintiffs' motion for a preliminary injunction.

**I.      BACKGROUND**

    **1. Statutory and Regulatory Framework**

FOIA requires agencies to make certain information "available to the public" upon request. 5 U.S.C. § 552(a). FOIA requests must follow the rules laid out in 5 U.S.C. § 552 and accompanying agency regulations. Specifically, such requests must "(i) reasonably describe[]" the records being sought and "(ii) [be] made in accordance with published rules stating the time, place, fees (if any) and procedures to be followed." *Id.* § 552(a)(3)(A). If a request meets those requirements, the agency in receipt of the request "shall make the records promptly available to any person." *Id.*

DHS's corresponding rules require requesters to "describe the records sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort." 6 C.F.R. § 5.3(b). The rules further dictate that requesters should, "[t]o the extent possible," "include specific information that may assist a component in identifying the requested records, such as the date, title or name, author, recipient, subject matter of the record, case number, file designation, or reference number." *Id.* If a requester does not meet that requirement, the regulations permit the agency to "at its discretion either administratively close the request or seek additional information

from the requester." *Id.* § 5.3(c). The regulations also instruct the agency to "inform the requester what additional information is needed or why the request is otherwise insufficient" after it receives such a request, and they allow requesters to "discuss their request with the [agency] component's designated FOIA Officer" for help to "reformulate or modify" their request. *Id* § 5.2(b).

Most FOIA requests are processed in the order in which they are received, 6 C.F.R. § 5.5(a), which can mean substantial wait-times given the growth in FOIA request volume. *See, e.g.*, ECF 10-1 ¶¶ 12–13 (stating that CBP received nearly 180,000 FOIA requests in fiscal year 2024, a 25% increase over the previous fiscal year). But FOIA permits some requests to enter a separate, faster line if they meet the requirements for "expedited processing." 5 U.S.C. § 552(a)(6)(E). In that provision, Congress directed each agency to "promulgate regulations . . . providing for expedited processing of requests for records . . . (I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency." *Id.* § 552(a)(6)(E)(i). The statute requires that those agency regulations "ensure . . . (I) that a determination of whether to provide expedited processing shall be made . . . within 10 days after the date of the request; and (II) expeditious consideration of administrative appeals of such determinations." *Id.* § 552(a)(6)(E)(ii).

DHS's expedited processing regulations specify a small set of additional reasons beyond the statute's "compelling need" category that may justify expedited processing. *See* 6 C.F.R. § 5.5(e). The enumerated reason Plaintiffs invoke here is that the request is "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." *Id.* § 5.5(e)(1)(iv).

**2. Factual and Procedural Background**

On July 21, 2024, President Joe Biden suspended his presidential campaign and endorsed Vice President Kamala Harris to be the Democratic Party's nominee, a nomination that she secured the following month. ECF 1-5 at 6. According to Plaintiffs, President Biden had previously (in April 2021) appointed Vice President Harris as his "border czar," *id.*, a term used by Plaintiffs but not the Government. "Effectively," Plaintiffs explain, "this meant Vice President Harris would be responsible for overseeing and coordinating border security policies and operations." *Id.* That purported role is the subject of Plaintiffs' FOIA request.

Plaintiffs' pursuit of undisclosed information about Vice President Harris's role as, in Plaintiffs' phrasing, "Border Czar" did not begin with the FOIA request before the Court today. Instead, Plaintiffs first filed a FOIA request on this topic on July 30, 2024, seeking from DHS "[a]ll records containing the terms 'border czar' and 'Harris' from April 14, 2021 to the present." Compl. at 3, *Heritage Found. v. DHS* (*Heritage I*), No. 24-cv-2343-RDM (D.D.C. Aug. 12, 2024), ECF 1. The next day, DHS requested that Plaintiffs provide a more detailed request, including "what specific records you are seeking regarding the border and the VP" and "what offices to conduct a search in." Am. Compl. ¶ 15, *id* at ECF 7 (Aug. 30, 2024). In that July 31 correspondence, DHS informed Plaintiffs that it was not denying Plaintiffs' request but instead sought clarification pursuant to DHS FOIA regulations. *Id*. at ECF 7-3 at 3 (explaining that 6 C.F.R. § 5.3(b) requires a FOIA requester to "describe the records [they] are seeking with as much information as possible to ensure that [DHS's] search can locate them with a reasonable amount of effort"). Plaintiffs specified a handful of offices that it asked DHS to search but otherwise did not clarify its request. *Id.* at ECF 7-3 at 2. On August 6, 2024, DHS "administratively closed" Plaintiffs' request because it determined that it "[could not] conduct an adequate search" for the records Plaintiffs sought. *Id*. at ECF 7 ¶ 17; *id.* at ECF 7-4 at 2. DHS advised Plaintiffs that their

request "may be reinstated upon receipt of a perfected request" (i.e., a request that met the specificity requirements of 6 C.F.R. § 5.3(b)). *Id.* at ECF 7-4 at 2.

Plaintiffs did not file a new request in that case. Instead, Plaintiffs in *Heritage I* filed a complaint on August 12, 2024, and an amended complaint and motion for preliminary injunction on August 30, 2024. Compl., *Heritage I*, No. 24-cv-2343-RDM (D.D.C. Aug. 12, 2024), ECF 1; Am. Compl., *id.* at ECF 7 (Aug. 30, 2024); Mot. for Prelim. Inj., *id.* at ECF 8 (Aug. 30, 2024). The *Heritage I* court held a status conference on September 4, 2024, at which the Parties reported that DHS had agreed to begin a search for records responsive to Plaintiffs' request and work with Plaintiffs on a processing schedule, and that Plaintiffs had "narrowed [their] request." *Id.* at ECF 11 at 42 (Hr'g Tr. 42:19). DHS subsequently offered to complete production of the requested records by October 7, 2024. *See id.* at ECF 12. The Parties filed weekly status reports on DHS's production of documents in that case until October 8, at which point Defendant reported that it had completed production of "eighty-nine pages of non-exempt reasonably segregable portions of responsive records to Plaintiffs on October 7, 2024" and that this "complete[d] the Department's production." *Id.* at ECF 19 at 1. On October 13, Plaintiffs withdrew their motion for a preliminary injunction because DHS's timely production provided "the relief requested in their Motion." *Id.* at ECF 20 at 1.

Despite DHS's rapid response to Plaintiffs' request in *Heritage I*, Plaintiffs were apparently not satisfied. To the contrary, on September 18, 2024—as DHS was conducting its search and production in *Heritage I*—Plaintiffs filed another FOIA request on substantially the same topic. That request, which is before the Court here, sought "[a]ll documents and communications between U.S. Customs and Border Protection and the Executive Office of the Vice President related to the southwest border or illegal immigration" from "January 20, 2021, through the

5

present." ECF 1-5 at 2. Besides the distinct wording of the request, Plaintiffs' initial request letter and justification for expedited processing echoed almost verbatim their submission in *Heritage I*. *Compare Heritage I*, No. 24-cv-2343-RDM (D.D.C. Aug. 30, 2024), ECF 7-2, *with* ECF 1-5. The next day, much like DHS had in *Heritage I*, CBP emailed Plaintiffs notifying them that their request had been administratively closed because it failed to "include a clear and detailed description of the records being requested," as required by 6 C.F.R. § 5.3(b), such as "employee names, an email domain and specific key terms." ECF 10-7 at 2. Thus, the email explained, the request "[was] not a perfected request" and CBP could not "initiate a search for responsive records." *Id.* CBP advised Plaintiffs to "resubmit your FOIA request, along with the required information." *Id.*

On September 23, Plaintiffs emailed a CBP official alerting them that the FOIA portal said their request had been closed (though not acknowledging the September 19 email explaining why that was). ECF 1-6 at 2. And on September 24, CBP responded to explain, again, that Plaintiffs' request "lack[ed] information needed to conduct a valid search" and provided additional instructions on the kind of information that would make the search sufficiently detailed to be valid (e.g., specific email addresses or officials to search and specific key terms). *Id.* Later that day, Plaintiffs responded that they "understood" CBP's response but that its response "[was] not a valid determination as you well know." *Id.* Plaintiffs asked that, if CBP "intend[ed] to deny the Request," that it "do so promptly." *Id.* Plaintiffs did not file a new request or provide the clarifications that CBP requested. Instead, on October 2, Plaintiffs filed a complaint in this Court. ECF 1.

Even as DHS neared completion of its production in *Heritage I*, the feud in this case continued. On October 3, CBP responded to Plaintiffs' September 24 email with additional

6

information and instructions regarding the level of detail that would be required for Plaintiffs to perfect their then-noncompliant (and administratively closed) request. ECF 10-10 at 2–3. The email also explained, "[o]ur office is willing to work with you on this request, but CBP FOIA does not have full staffing and received over 179,000 FOIA request[s] this year. We do not have the bandwidth to process your request as originally written, as it would be unduly burdensome." According to CBP, its FOIA office, which sent this email, was not aware that Plaintiffs had filed suit the previous day. ECF 10-1 at 3.

On October 5, Plaintiffs responded to CBP FOIA explaining, "[w]e simply do not understand why searches cannot easily be run here and why you believe they would be burdensome." ECF 8-10 at 2. Plaintiffs also threatened to "move for a [preliminary injunction] on [October 7] if no further progress has been made." *Id.* at 3. And on October 8, without any further clarification about their (closed) request and without submitting a new request—and just one day after DHS satisfactorily completed its production in *Heritage I* following Plaintiffs' narrowing of their request there—Plaintiffs filed a motion for a preliminary injunction in this case. ECF 7.

Plaintiffs argue that they are entitled to expedited processing because "Vice President Kamala Harris's role in creating and implementing the Biden-Harris Administration's systemic and catastrophic border policy failures" is a "fundamental question raised by widespread and continuous media coverage that goes directly to Government integrity and sits at the front of the minds of the American People—principally as concerns the 2024 General Election." ECF 7-1 at 8. They therefore ask this Court to order DHS to produce all non-exempt documents by October 22, 2024, based on early voting timelines in the Presidential election. *Id.* at 30–31. On October 17, 2024, DHS filed a brief in opposition to Plaintiffs' motion.[2] ECF 10. Meanwhile, according to

---

[2] Although Plaintiffs requested a hearing on their motion for preliminary injunction, *see* ECF 7-1 at 1, the Court declines that request and instead decides the motion on the papers, *see* Local Civ. R. 65.1(d).

DHS, Plaintiffs do not appear to have disseminated or publicized any of the 89+ documents DHS produced in *Heritage I* about Vice President Harris's role as "border czar." ECF 10 at 16.

## II. LEGAL STANDARD

To prevail on a motion for preliminary injunction, Plaintiffs must show (1) that they are "likely to succeed on the merits"; (2) that they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) that "the balance of equities tips in [their] favor"; and (4) that "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Where the federal government is the nonmoving party, "the balance of equities and public interest factors merge." *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 36 (D.D.C. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Critically, a preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as [a matter] of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). A court may only grant this "extraordinary remedy . . . upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. In deciding such a motion, courts consider "the entire record in [the] case." *Landmark Legal Found. v. E.P.A.*, 910 F. Supp. 2d 270, 272 (D.D.C. 2012).

## III. ANALYSIS

### A. Plaintiffs' Failure to Exhaust Defeats Their Case on the Merits

The D.C. Circuit has made clear that "[e]xhaustion of administrative remedies is generally required before filing suit in federal court." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990). This exhaustion requirement ensures "that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision"—building a wall between the agency's review and the court's that requesters may cross only when authorized. *Id.*; *accord Wilbur v. C.I.A.*, 355 F.3d 675, 677 (D.C. Cir. 2004).

Plaintiffs' motion runs headlong into FOIA's exhaustion wall. Recall that DHS regulations, tracking the FOIA statute, require requesters to "describe the records sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort." 6 C.F.R. § 5.3(b). If a requester fails to do so, the regulations permit the agency to "at its discretion either administratively close the request or seek additional information from the requester." *Id.* § 5.3(c). Courts in this District have repeatedly held that "failure to engage with an agency after a request for clarification amounts to a failure to exhaust." *McKathan v. U.S. Dep't of Homeland Sec.*, No. 22-CV-1865, 2024 WL 1344434, at *5–6 (D.D.C. Mar. 29, 2024); *accord Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002); *Vest v. Dep't of Air Force*, 793 F. Supp. 2d 103, 114–15 (D.D.C. 2011). As the D.C. Circuit has explained, permitting a requester to go to court without first responding to an agency's request for clarification and allowing the agency to then consider its clarified request "would undercut the purposes of exhaustion." *DeBrew v. Atwood*, 792 F.3d 118, 123–24 (D.C. Cir. 2015).

Plaintiffs suggest that they could not exhaust the FOIA administrative process because they never received a determination on their request for expedited processing. ECF 7-1 at 12–13. But that argument runs aground because DHS made a different kind of determination altogether, one that appears perfectly consistent with its discretion under the statute and DHS regulation: DHS found that Plaintiffs' request was not sufficiently detailed. ECF 10-7 at 2.[3] And accordingly, DHS

---

[3] Plaintiffs argue in their Amended Complaint—which they filed after the Government's response to Plaintiffs' motion for preliminary injunction, seemingly in lieu of seeking leave to file a reply—that CBP's administrative closure was not a final determination and thus that the only "determination" CBP has made here was to "constructively deny" Plaintiffs' expedited processing request, allowing them to file here. ECF 12 ¶¶ 22–24. While that argument has multiple problems, it suffices to observe that the case Plaintiffs cite for that proposition (a cite they added in their complaint amendment) says exactly the opposite. There, a court in the Central District of California held that the agency's administrative closure of a request after it referred the request to another component within the agency "[did] not constitute a final determination." *Am. C.L. Union Found. of S. Cal. v. U.S. Immigr. & Customs Enf't*, No. 2:22-CV-4760, 2024 WL 3370532, at *17 (C.D. Cal. July 8, 2024). But that court explicitly distinguished administrative closure for that reason from administrative closure "caused by the plaintiffs' failure to perfect their requests," and said

exercised its discretion to administratively close Plaintiffs' noncompliant request and permit Plaintiffs to make a new one, just as its rules plainly permit. *See* 6 C.F.R. § 5.3(c). At that point, Plaintiffs no longer had an active FOIA request that could be considered for expedited processing. Under DHS FOIA rules, Plaintiffs' next step was to file another FOIA request that met the agencies' standards for sufficient detail per 6 C.F.R. § 5.3(b), and then wait the statutory 10-day period for DHS to determine whether it would grant or deny their expedited processing request. Indeed, CBP's FOIA office complied with its regulatory requirements by providing Plaintiffs extensive guidance on how to formulate a sufficiently detailed request. *See* ECF 1-6 at 2; ECF 10-10 at 2–3. Because Plaintiffs did not themselves follow DHS's clearly outlined procedures by revising and refiling their request, and instead filed suit in this Court, they did not exhaust FOIA remedies. Accordingly, this Court—per D.C. Circuit instructions—may not grant the requested relief. *Wilbur*, 355 F.3d at 677 ("[E]xhaustion of administrative remedies is a mandatory

---

that the latter *are* final determinations. *Id.* at *18. That holding is consistent with the caselaw in this Circuit. And, contrary to Plaintiffs' suggestion, that principle is not contradicted by *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, which interpreted the meaning of 5 U.S.C. § 552(a)(6)(A)(i) and does not pertain to administrative closure under DHS regulations. 711 F.3d 180, 185 (D.C. Cir. 2013). In short, the cases confirm that the administrative closure *was* a valid determination under DHS rules, that Plaintiffs' proper next step was to file a new request (not seek judicial review), that there was no constructive denial of their expedited processing request, and that coming to this Court was therefore premature.

prerequisite to a lawsuit under FOIA.").[4] Plaintiffs thus have very little, if any, chance of success on the merits.[5]

### B. Plaintiffs Fail to Show Irreparable Harm

Even if Plaintiffs' merits problems alone do not doom their request for preliminary injunction, their dubious case for irreparable harm seals the deal. To constitute irreparable harm, injury to Plaintiffs must be "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief to prevent irreparable harm." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7–8 (D.C. Cir. 2016). In the context of motions for preliminary injunctions on FOIA expedited processing requests, "[c]ourts in our district have generally found irreparable harm . . . only where the requested documents are time-sensitive and highly probative, or even essential to the integrity, of an imminent event, after which event the utility of the records would be lessened or lost." *Heritage Found. v. U.S. Env't Prot. Agency*,

---

[4] To be sure, the D.C. Circuit has also held that FOIA exhaustion "is not jurisdictional" and is instead a "jurisprudential doctrine" to which there may be exceptions. *Hidalgo v. F.B.I.*, 344 F.3d 1256, 1258 (D.C. Cir. 2003). Under that doctrine, "failure to exhaust precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar." *Id.* at 1258–59. Plaintiffs here do not discuss whether requiring exhaustion in their case would serve or disserve the purposes of exhaustion or DHS's particular administrative scheme, so the Court does not understand Plaintiffs to be arguing for an exception to FOIA's exhaustion requirement. Even if they were, however, the Court would have no trouble finding that imposing an exhaustion requirement in this case serves the purposes of exhaustion and the particular administrative scheme. As discussed further below, DHS is contending with a significant backlog of FOIA requests, and its requirement of sufficient detail helps it ensure that the approximately 180,000 requests it receives each year are reasonably scoped for an agency response. *See* ECF 10-1 ¶¶ 13–14. That seems particularly important in the context of a request for expedited processing, where the agency must give the request "priority" and respond "as soon as practicable." 6 C.F.R. § 5.5(e)(4). The agency is best positioned to determine the sufficiency of the requests it receives, and judicial review at this stage would "undercut the purposes of exhaustion, namely preventing premature interference with agency processes" and "affording the parties and the courts the benefit of the agency's experience and expertise." *Hidalgo*, 344 F.3d at 1259. That is why courts find failure to exhaust, and decline review, when requesters "fail[] to describe adequately the records sought, provide further clarification, or otherwise engage with DHS." *McKathan*, 2024 WL 1344434, at *5–6 (citing *Keys v. DHS*, No. 08-cv-0726, 2009 WL 614755, at *5 (D.D.C. Mar. 10, 2009)).

[5] Because Plaintiffs' merits argument fails at the exhaustion step, the Court has no occasion to decide whether Plaintiffs meet the other requirements for expedited processing under FOIA and DHS rules, *see* 6 C.F.R. § 5.5(e)(1)(iv)—an issue that the Parties debate extensively in their briefing, ECF 7-1 at 20–26; ECF 10 at 21–24. The agency gets to make a determination of requesters' entitlement to expedited processing in the first instance, and Plaintiffs did not comply with the procedures that would enable the agency to make that determination.

No. 23-cv-748, 2023 WL 2954418, at *4 (D.D.C. Apr. 14, 2023), *appeal dismissed*, No. 23-5086, 2023 WL 8116008 (D.C. Cir. Nov. 17, 2023).

Plaintiffs have not met their burden under that standard. Viewed in isolation, Plaintiffs make a colorable argument that (a) Vice President Harris's role in border policy is a "core issue[] in the forthcoming Presidential Election," and (b) the utility of information about that role will substantially lessen after the upcoming election. ECF 7-1 at 40. But Plaintiffs' argument is belied by their own delays in making this FOIA request and their vexing, if not vexatious, approach to requesting and litigating it.

For one thing, Plaintiffs delayed making this request for nearly two months after Vice President Harris entered the race for President. *See* ECF 1-5 (submitting the request on September 18 and citing Vice President Harris's entry into the race on July 21). For another, Plaintiffs already successfully jumped the line on another FOIA request regarding the Vice President's role as "Border Czar." *See Heritage I*, No. 24-cv-2343-RDM (D.D.C.). Yet, even as Plaintiffs worked with DHS to narrow their request—and even as they saw that DHS was willing and able to produce responsive records on this topic at an expedited pace—Plaintiffs proceeded to prematurely file a complaint on the instant FOIA request without even attempting to comply with basic DHS regulations. Plaintiffs could have refined their original request during negotiations in *Heritage I* to capture the (closely related) subject of interest in their new request, or they could have clarified their new request per CBP's instructions instead of filing prematurely with this Court. Plaintiffs did neither. Plaintiffs' self-imposed delays and their attempts to circumvent the rules—rules they clearly understand—undermine any argument that their injury is "so imminent that there is a clear and present need for equitable relief to prevent irreparable harm." *League of Women Voters*, 838 F.3d at 8; *see also Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("An unexcused

delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm.").

So too does Plaintiffs' apparent failure, in many cases, to disseminate the results of their FOIA requests. Plaintiffs are repeated FOIA requesters, with "thousands" of requests just this year according to the Government. ECF 10 at 15 & n.1 (citing several complaints for expedited processing sought by Plaintiffs in this District over the past year). And yet, the Government points to evidence showing that Plaintiffs frequently fail to publicize the results of these requests. *See id.* at 16–17 & n.2 (the Government discussing results of Google searches and arguing that the Court "may take judicial notice of Google search results"). Most telling, Plaintiffs apparently did not disseminate any results of their previous "Border Czar" request despite its supposed urgency. *Id.* at 17. That pattern poses a challenge for Plaintiffs' irreparable harm argument, which hangs almost entirely on the asserted harm that voters will face if they "cannot use [the requested] records to inform their votes on an important issue" in the upcoming election. ECF 7-1 at 40. The record and facts within judicial notice call into question the premise—necessary for Plaintiffs' irreparable harm argument—that Plaintiffs will in fact share with voters the results of their expedited request and thus that a preliminary injunction here would avert "certain and great, actual and not theoretical" injury. *League of Women Voters*, 838 F.3d at 8.[6]

Plaintiffs' remaining argument for irreparable harm also falls short. Plaintiffs contend that they automatically satisfy the irreparable harm showing if they meet the statutory and regulatory

---

[6] Plaintiffs' Amended Complaint alleges, seemingly in response to this argument by the Government, that Plaintiffs' "journalistic work is published most frequently on X (formally known as Twitter) to provide information directly to the American people." ECF 12 ¶ 3. But Plaintiffs' bare allegation is not in evidence. "An application for a preliminary injunction shall be made in a document separate from the complaint. The application shall be supported by all affidavits on which the plaintiff intends to rely." Local Civ. R. 65.1(c); *see also* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2949 (3d ed. 2024). ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction."). That defect aside, the statement does not directly contradict the Government's evidence that Plaintiffs often fail to disseminate their FOIA request results.

requirements for expedited processing. *See* ECF 7-1 at 37 (arguing that a "wrongful denial of a statutory right to expedited processing necessarily causes irreparable harm because the statutory right is solely one of relative timing and the clock cannot be wound back to restore to Plaintiffs the time lost each day the Request is not expedited"). Yet, as discussed above, DHS did not wrongfully deny a statutory right to expedited processing; to the contrary, DHS administratively closed Plaintiffs' expedited processing request pursuant to its clear statutory and regulatory discretion. Moreover, Plaintiffs' purported rule would, in Plaintiffs' own words, "collapse[] the likelihood of success on the merits with a showing of irreparable harm." *Id.* Yet, as the Government argues, "FOIA offers no statutory basis to lighten Plaintiffs' preliminary injunction burden in this manner," ECF 10 at 13, and Plaintiffs cite no statutory text or binding caselaw supporting their strident rule. The Court thus declines to hold that "an improper denial of expedited processing is itself (absent some extraordinary circumstance) irreparable harm." ECF 7-1 at 37. Such a rule is unsupported by the statute, and regardless, Plaintiffs cannot satisfy it because DHS did not issue an improper denial or make any expedited processing finding at all.

To be clear, the Court would deny Plaintiffs' motion on exhaustion grounds even if Plaintiffs had a stronger argument for irreparable harm. Still, to the extent some extraordinary, certain irreparable harm could overcome Plaintiffs' strong unlikelihood of success on the merits, they fail to make the showing that such a result would require.

### C. The Government's and the Public Interest Would Not Be Served by Forcing the Agency to Prioritize Plaintiffs' Request

The balance of equities does not tip in Plaintiffs' favor, and the Government's and the public interest would not be served by forcing the agency to prioritize this request, in an extraordinarily short period of time, over the mountain of other FOIA requests in CBP's backlog. According to the Government, CBP FOIA currently has a backlog of more than 125,000 FOIA

requests and is involved in more than 100 FOIA lawsuits. ECF 10-1 ¶ 14. Further, CBP grants expedited processing requests "infrequently, and usually only when the request is related to an imminent life or safety threat." *Id.* ¶ 16. And as CBP attests in its Declaration,

> Allowing Plaintiffs to jump the queue ahead of other FOIA requesters seeking information would incentivize litigation and weaponize FOIA at the expense of those who do not have the means to bring suit, who have been waiting patiently for a response to their request, or who are amenable to discussing ways in which their request might reasonably be narrowed to help expedite CBP FOIA's processing time.

*Id.* ¶ 18.

Finally, Plaintiffs' unwillingness to work with the agency to clarify its request and facilitate any processing at all—let alone expedited processing—renders relief here all the more inequitable and contrary to the public interest. Plaintiffs insist that "the entire point of expedited processing under FOIA and the DHS'[s] own regulations is a judgment by both Congress and the agency that these harms and burdens [on the agency's FOIA operations] are outweighed by the need to process certain requests on an expedited basis to ensure transparency into salient and time-sensitive issues of the day." ECF 7-1 at 42–43. Accordingly, they claim, the balance of the equities and public interest questions were already answered by Congress and "largely merge[] with the merits" of Plaintiffs' expedited processing request. *Id.* at 42. But, again, Plaintiffs did not follow Congress's statute or DHS regulations, and they therefore lack a case on the merits. Thus, even accepting Plaintiffs' merger rule *arguendo*, Plaintiffs cannot satisfy it here. FOIA's procedural rules exist for a reason, and disregarding them here would disserve the public interest.

In sum, the Court will not compel DHS to prioritize Plaintiffs' vague, noncompliant request above the 125,000 FOIA requests in its backlog, or even the smaller number of cases in its expedited processing queue, given Plaintiffs' clear failure to exhaust the administrative process and dubious showing of irreparable harm. Plaintiffs have already successfully sought information

15

about the issue they claim is now so urgent, and their premature attempt to return to this Court with a highly similar request borders on the vexatious.

\* \* \*

For the foregoing reasons, Plaintiffs' motion for preliminary injunction, ECF 7, is **DENIED.** A separate order accompanies this memorandum opinion.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: October 25, 2024